1   Richard A. Sipos (Bar No. 126982)
    Carl D. Ciochon (Bar No. 165963)
2   rsipos@wendel.com
    cciochon@wendel.com
3   **WENDEL, ROSEN, BLACK & DEAN LLP**
    1111 Broadway, 24th Floor
4   Oakland, CA  94607-4036
    Telephone:  (510) 834-6600
5   Fax:  (510) 834-1928

6   Attorneys for Plaintiffs
    Dos Valles, S.A. and Comexa, S.A.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOS VALLES, S.A., a foreign corporation organized and existing under the laws of Panama, and COMEXA, S.A., a foreign corporation organized and existing under the laws of Panama,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED GENETICS SEED COMPANY, INC., a business entity of unknown form; and REMO LUDERGNANI, an individual,<br><br>Defendants. | Case No.  C08-01077 EMC<br><br>**FIRST AMENDED COMPLAINT** |

For its Complaint herein, Plaintiffs Dos Valles, S.A. ("Dos Valles") and Comexa, S.A. ("Comexa") allege as follows:

**The Parties**

**1.**    Dos Valles is a foreign corporation organized and existing under the laws of Panama, with its principal place of business in Panama City, Republic of Panama.  At all times herein relevant, Dos Valles was engaged in the business of growing, marketing, and exporting fresh fruits and other perishable agricultural commodities for sale and distribution in the United States and Europe.

**2.** Comexa is a foreign corporation organized and existing under the laws of Panama, with its principal place of business in Panama City, Republic of Panama. At all times herein relevant, Comexa was engaged in the business of growing, marketing, and exporting fresh fruits and other perishable agricultural commodities for sale and distribution in the United States and Europe.

**3.** Dos Valles and Comexa are sometimes collectively referred to herein as "Dos Valles."

**4.** Defendant United Genetics Seed Company, Inc. ("UGS") is a business entity of unknown form with its principal place of business in Hollister, California. At all times relevant herein, UGS held itself out as a developer, distributor, and seller of agricultural seed.

**5.** Defendant Remo Ludergnani is an individual affiliated with UGS. Dos Valles is informed and believes that Ludergnani is UGS's President and also its sole or majority owner. Dos Valles is informed and believes that Ludergnani is a resident of California.

**6.** Plaintiffs are informed and believe and on that basis allege that at all times relevant herein, each Defendant was the alter ego, agent, joint venturer, co-conspirator, employee, or representative of each other Defendant, and in doing the acts herein alleged, acted with the knowledge, ratification, and consent of the other Defendants, and in concert therewith.

**7.** On information and belief, Defendant United Genetics was the alter ego of defendant Ludergnani in that it was undercapitalized, failed to follow corporate and other legal requirements, failed to carry adequate insurance for the business in which it was organized and for the risks of harm it knew that its products and business posed to the public and for other reasons.

### Jurisdiction and Venue

**8.** Pursuant to 28 U.S.C. §1332(a)(2), this Court has original jurisdiction of this action in that the amount in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of the Republic of Panama (Dos Valles and Comexa) and citizens of California (UGS and Ludergnani).

**9.** Pursuant to 28 U.S.C. §1396(a), venue lies in the Northern District of California in that (a) Dos Valles and Comexa are informed and believe that UGS and Ludergnani reside in the Northern District of California, and (b) a substantial part of the events or omissions giving rise to Dos Valles' and Comexa's claims occurred in said District.

**General Allegations – Watermelon Seed**

**10.** In or about the summer of 2005, Dos Valles' agent, Francisco Antunez, met with Ludergnani in Bakersfield, California to discuss Dos Valles' potential purchase of watermelon seed from UGS. Antunez specifically advised Ludergnani that Dos Valles intended to grow the watermelon for export to the United States and Europe, and that it had for several years been successfully growing and shipping a crimson-type watermelon variety known as "Quetzali." In response, Ludergnani, on behalf of UGS, represented and warranted that a variety of watermelon seed known as "Early Beauty" was equal or superior in quality to the Quetzali seed. He assured Antunez that the Early Beauty seed would meet all of Dos Valles' needs. In particular, he represented and warranted that the Early Beauty seed:

  **(a)** Was suitable for growing in Panama;;
  **(b)** Produced a high yield of watermelons;
  **(c)** Produced melons of superior internal quality; and,
  **(d)** Produced melons with a long shelf life suitable for shipment from Panama to the United States and Europe.

**11.** In reliance on Ludergnani's representations, in or about October 2005, Dos Valles ordered a large quantity of Early Beauty watermelon seed from UGS for delivery to Dos Valles and Comexa in Panama.

**12.** In or about December 2005, Dos Valles received (and paid for) in excess of 400 cans of watermelon seed from UGS (the "UGS Watermelon Seed"). The seed was delivered to Dos Valles in cans labeled "Early Beauty." An unknown number of the cans labeled "Early Beauty" were mislabeled by UGS and Ludergnani and in fact contained watermelon seed of a different variety known as "Early Gitana" and possibly other varieties.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

**13.** Dos Valles, Comexa and their growers in Panama planted, cultivated, and harvested the UGS Watermelon Seed in accordance with standard and generally accepted agricultural practices, and the recommendations of UGS.

**14.** The UGS Watermelon Seed did not perform in accordance with Ludergnani's representations and warranties, or in accordance with UGS's written specifications. Specifically, the UGS Watermelon Seed:

    **(a)** Did not produce a high yield of melons;

    **(b)** Produced melons of poor internal quality;

    **(c)** Produced melons with a poor shelf life not suitable for shipment from Panama to the United States and Europe.

**15.** Dos Valles discovered the melons' shortcomings only after shipping substantial quantities to Europe for sale. Upon arrival in Europe, it was discovered the melons grown from UGS Watermelon Seed were mushy, watery, and virtually unmarketable. The crop of watermelon grown from UGS Watermelon Seed was a near total loss. Shipments over shorter distances to Florida were similarly defective and unmarketable.

**16.** As the direct and proximate consequence of Defendants' wrongful conduct in connection with the marketing, labeling, and sale of UGS Watermelon Seed, as herein alleged, Dos Valles and Comexa have suffered general and special damages which include, without limitation, the following:

    **(a)** Monies paid to UGS for the purchase of UGS Watermelon Seed;

    **(b)** Costs and expenses incurred in connection with the planting and cultivation of UGS Watermelon Seed,

    **(c)** Costs and expenses incurred in connection with the harvest, storage, packing, shipment, and marketing of melons grown from UGS Watermelon Seed;

    **(d)** Loss of use of Dos Valles' and Comexa's tangible physical property, consisting of its agricultural fields, during the period the defective UGS Watermelon Seed was being grown;

1       **(e)**      Lost profits;

2       **(f)**      Damage to reputation and lost goodwill.

### General Allegations – Squash Seed

**17.** Manuel Haito of Dos Valles and Ludergnani also discussed Dos Valles' potential purchase of butternut squash seed from UGS. Ludergnani, on behalf of UGS, represented and warranted that he could provide Dos Valles with a butternut squash seed that was suitable for growing in Panama and would meet Dos Valles' needs.

**18.** In reliance on Ludergnani's representations, in or about October 2005, Dos Valles ordered a substantial quantity of HY Ultra F1 butternut squash seed ("UGS Squash Seed") from UGS for delivery to Dos Valles in Panama.

**19.** Dos Valles is informed and believes and on that basis alleges that UGS obtained from a third party 200 pounds of a butternut squash seed varietal known as "Big Chief," removed the Big Chief seeds from their original packaging, repacked them in cans, labeled the cans as UGS "Ultra," and shipped them to Dos Valles in Panama.

**20.** In or about March 2006, Dos Valles received the shipment of so-called "Ultra" squash seed from UGS. Dos Valles' and its growers in Panama planted the UGS Squash Seed in accordance with standard and generally accepted agricultural practices.

**21.** In or about April 2006, Dos Valles was advised by the Panamanian government that the UGS Squash Seed had tested positive for the presence of several seed-borne diseases. The Panamanian government ordered that any unplanted UGS Squash Seed be destroyed and that all fields where it had been planted be plowed under, destroying the entire crop.

**22.** As a direct and proximate consequence of UGS's wrongful conduct in connection with the marketing, labeling, and sale of UGS Squash Seed, as herein alleged, Dos Valles has suffered general and special damages which include, without limitation, the following:

      **(a)**      Monies paid to UGS for the purchase of UGS Squash Seed;

      **(b)**      Costs and expenses incurred in connection with the planting and cultivation of UGS Squash Seed;

1   **(c)**   Costs and expenses incurred in connection with the destruction of unplanted UGS Squash Seed and the plowing under of fields where it had been planted;

**(d)**   Damage to Dos Valles' tangible physical property resulting when Dos Valles destroyed unplanted UGS Squash Seed and plowed under the fields where it had been planted;

**(e)**   Loss of use of Dos Valles' tangible physical property, consisting of its agricultural fields, during the period UGS Squash Seed was being grown;

**(f)**   Lost profits;

**(g)**   Damage to reputation and lost goodwill.

**FIRST CLAIM FOR RELIEF**
**(Negligence)**

**23.**   Dos Valles realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

**24.**   Defendants owed Dos Valles a duty of care in connection with the production, marketing, sale, packaging, labeling, recommendations, and shipping of the UGS Watermelon Seed and UGS Squash Seed.

**25.**   As herein alleged, Defendants breached their duty of care.

**26.**   As the direct and proximate consequence of Defendants' negligence, Dos Valles has suffered damages in excess of $2 million, as more specifically alleged in Paragraphs 16 and 22 of this Complaint.

**SECOND CLAIM FOR RELIEF**
**(Negligence Per Se)**

**27.**   Dos Valles realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

**28.**   Defendants violated the Federal Seed Act (7 U.S.C. § 1571(d)) and the California Seed Law (Cal. Food & Agric. Code §52482) by selling mislabeled seed to Dos Valles.

**29.** Defendants' violation of these statutory provisions was the direct and proximate cause of harm to Dos Valles, as more specifically alleged in Paragraphs 16 and 22 of this Complaint.

**30.** The harm suffered by Dos Valles resulted from an occurrence of the nature these statutes were designed to prevent.

**31.** Dos Valles is one of the class of persons these statutes were designed to protect.

**THIRD CLAIM FOR RELIEF**
**(Product Defect and Strict Liability)**

**32.** Dos Valles realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

**33.** At all times relevant, UGS was engaged in the business of production, handling, labeling, distributing, and selling agricultural seeds.

**34.** UGS intended that the UGS Watermelon Seed and UGS Squash Seed be used to grow marketable watermelons and squash.

**35.** UGS knew that its products, including the UGS Watermelon Seed and UGS Squash Seed, would be purchased by Dos Valles and members of the general public, and used by them and others, without inspection for defects.

**36.** The UGS Watermelon Seed and UGS Squash Seed were defective when they left UGS's possession.

**37.** UGS knew that the defects in the UGS Watermelon Seed and UGS Squash Seed would not be discovered by Dos Valles and/or any reasonable consumer.

**38.** Dos Valles used the UGS Watermelon Seed and UGS Squash Seed in ways that were reasonably foreseeable to UGS.

**39.** The UGS Watermelon Seed and UGS Squash Seed did not perform as an ordinary consumer would have expected at the time of use.

**40.** As a direct and proximate result of UGS's sale of defective seeds, Dos Valles has suffered damages in an amount in excess of $2 million, as more specifically alleged in Paragraphs 16 and 22 of this Complaint.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Express Warranty)**

**41.**  Dos Valles realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

**42.**  Dos Valles negotiated with UGS for the purchase of certain goods consisting of watermelon and butternut squash seeds. In the course of the negotiations, particular descriptions of the goods were made by UGS, orally and in writing, which formed a material part of the basis of the bargain between the parties.

**43.**  In particular, Ludergnani, on behalf of UGS, represented and warranted to Dos Valles that the UGS Watermelon Seed:

   **(a)**   Was suitable for growing in Panama;

   **(b)**   Produced a high yield of melons;

   **(c)**   Produced melons of superior internal quality; and,

   **(d)**   Produced melons with a "durable shelf life" and "good transportation resistance" for shipment from Panama to the United States and Europe.

Each of these representations constituted an express warranty.

**44.**  Ludergnani, on behalf of UGS, also represented and warranted that the UGS Squash Seed was suitable for growing in Panama and would meet Dos Valles' needs. This representation constituted an express warranty.

**45.**  Dos Valles purchased the UGS Watermelon Seed and UGS Squash Seed from UGS in reliance on these representations and warranties.

**46.**  As herein alleged, UGS breached these express warranties.

**47.**  Plaintiff Dos Valles has repeatedly notified UGS, both in writing and orally, that the UGS Watermelon Seed and UGS Squash Seed were defective. UGS has and continues to refuse to compensate Dos Valles for the significant damages that it has suffered as a result of UGS's breaches of warranty, as more particularly alleged in Paragraphs 16 and 22 of this Complaint.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Implied Warranty of Merchantability)**

**48.** Dos Valles realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

**49.** UGS is a merchant of agricultural seeds, including the watermelon and squash seed that it sold to Dos Valles.

**50.** The UGS Watermelon Seed and UGS Squash Seed were sold to Dos Valles subject to an implied warranty of merchantability; specifically, a warranty that the seeds would produce watermelons and squash of merchantable quality.

**51.** As herein alleged, UGS breached the implied warranty of merchantability.

**52.** As a direct and proximate result of UGS's breaches of warranty, Dos Valles has suffered damages in excess of $2 million, as more specifically alleged in Paragraphs 16 and 22 of this Complaint.

**SIXTH CLAIM FOR RELIEF**
**(Breach of Implied Warranty of Quality of Conditions of Goods)**

**53.** Dos Valles realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

**54.** At the time of sale of the UGS Watermelon Seed and UGS Squash Seed, there arose from the usage of trade an implied warranty that the seeds would be of a quality and condition such as would produce watermelon and squash that could be harvested, shipped, and sold in the United States and Europe.

**55.** As herein alleged, UGS breached the implied warranty of quality of conditions of goods.

**56.** As a direct and proximate result of UGS's breaches of warranty, Dos Valles has suffered damages in excess of $2 million, as more specifically alleged in Paragraphs 16 and 22 of this Complaint.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

**SEVENTH CLAIM FOR RELIEF**
**(Breach of Implied Warranty of Fitness)**

57. Dos Valles realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

58. Dos Valles relied on UGS's skill and judgment to select and sell watermelon and squash seeds that possess the specific characteristics that Plaintiff required for its watermelon and squash crops.

59. At the time Plaintiff purchased the UGS Watermelon Seed and UGS Squash Seed, UGS had reason to know, and indeed Dos Valles had expressly communicated to UGS, the particular purposes for which the seed was to be used. UGS had reason to know, moreover, that Dos Valles was relying upon UGS's skill and judgment to select and furnish seed suitable for Dos Valles' particular purposes. In short, the UGS Watermelon Seed and UGS Squash Seed were sold subject to an implied warranty by UGS that the goods were fit for a particular purpose.

60. As herein alleged, UGS breached the implied warranty of fitness.

61. As a direct and proximate result of UGS's breaches of warranty, Dos Valles has suffered damages in excess of $2 million, as more specifically alleged in Paragraphs 16 and 22 of this Complaint.

**EIGHTH CLAIM FOR RELIEF**
**(Fraudulent Misrepresentation)**

62. Dos Valles realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

63. Ludergnani and UGS made material misrepresentations of fact to Dos Valles concerning the UGS Watermelon Seed and UGS Squash Seed, as detailed in Paragraphs 7, 14 and 43 of this Complaint.

64. Defendants knew these representations were false at the time they were made.

65. In making these misrepresentations, Defendants intended to induce Dos Valles to purchase seed from UGS.

**66.** In deciding to purchase the UGS Watermelon Seed and UGS Squash Seed, Dos Valles reasonably and detrimentally relied on Defendants' misrepresentations.

**67.** As a direct and proximate result of Defendants' fraud, Dos Valles has suffered damages in excess of $2 million, as more specifically alleged in Paragraphs 16 and 22 of this Complaint.

**68.** In committing these wrongful acts, Defendants acted with malice, oppression, and fraud, thus justifying an award of exemplary damages in an amount sufficient to punish their misconduct and deter such misconduct in the future.

### NINTH CLAIM FOR RELIEF
### (Negligent Misrepresentation)

**69.** Dos Valles realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

**70.** Defendants owed Dos Valles a duty of care.

**71.** At the time Ludergnani and UGS made material misrepresentations of fact to Dos Valles (as detailed in Paragraphs 7, 14 and 43 of this Complaint) Defendants, and each of them, should have known that the representations were false. Defendants further could and should have discovered the true facts through reasonable diligence and inquiry, even if those facts were not known to Defendants at the time the misrepresentations were made.

**72.** At the time the misrepresentations were made, Defendants intended Dos Valles to rely upon them.

**73.** At all times relevant herein, Dos Valles was unaware that Defendants' representations were false. To the contrary, Dos Valles reasonably believed Defendants' representations to be true and justifiably relied upon them.

**74.** As a direct and proximate result of Defendants' negligent misrepresentations, Dos Valles has suffered damages in excess of $2 million, as more specifically alleged in Paragraphs 16 and 22 of this Complaint.

### TENTH CLAIM FOR RELIEF
### (Breach of Contract)

**75.** Dos Valles realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

**76.** Dos Valles purchased the UGS Watermelon Seed from Defendants. Under the terms of the parties' contract, Dos Valles agreed to pay for the UGS Watermelon Seed and Defendants agreed to sell and deliver the UGS Watermelon Seed to Dos Valles.

**77.** Dos Valles performed all things that were required to be performed under the contract between Dos Valles and Defendants except for those things they had been prevented or excused from performing by Defendants.

**78.** Defendants breached said contract by selling Dos Valles' defective seeds which produced watermelons which were damaged and non-saleable.

**79.** As a direct and proximate result of said contractual breaches by Defendants, Dos Valles has been damaged as set forth hereinabove.

### ELEVENTH CAUSE OF ACTION
### (Negligent Interference With Prospective Economic Relations)

**80.** Dos Valles realleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as though fully set forth herein.

**81.** Dos Valles has economic relationships with its buyers in the United States and Europe to whom it sells watermelons.

**82.** Defendants either knew or should have known of the various relationships between Dos Valles and its buyers based upon information communicated by Dos Valles regarding its need for watermelons to be shipped to the United States and Europe to its customers throughout the world.

**83.** Defendants knew or should have known that these relationships would be damaged and disrupted if Dos Valles failed to provide saleable watermelons that met the requirements of Dos Valles' customers.

Wendel, Rosen, Black & Dean LLP
1111 Broadway, 24th Floor
Oakland, CA 94607-4036

015042.0001\840356.1   *FIRST AMENDED COMPLAINT*   - 11 -

**84.** Defendants failed to act with reasonable care in the sale and production of the UGS watermelon seed which produced unmarketable and unsaleable watermelons.

**85.** As a direct and proximate result of Defendants' failure to act with reasonable care, the relationships between Dos Valles and its buyers in the United States and Europe was damaged and disrupted which has caused Dos Valles to suffer damages in an amount according to proof at trial.

**Prayer for Relief**

WHEREFORE, Dos Valles and Comexa pray for relief as follows:

**1.** That Judgment be entered in favor of Plaintiffs Dos Valles and Comexa each, and against Defendants, and each of them;

**2.** For compensatory, general, and special damages according to proof;

**3.** For exemplary damages in an amount sufficient to punish and deter;

**4.** For prejudgment interest at the legal rate;

**5.** For their reasonable attorneys' fees and costs of suit herein;

**6.** For such other and further relief as the Court may deem just and proper.

Dated: February 28, 2008                    WENDEL, ROSEN, BLACK & DEAN LLP


By: */s/ **Carl. D. Ciochon***
    Carl D. Ciochon
    Attorneys for Plaintiffs Dos Valles, S.A.
    and Comexa, S.A.